<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STACY ZEIDERS, CALVIN WESTLUND, MARIA LYDIA MARTINEZ, JAE YOUNG CHOI, AMANDA DeLONG, BRIAN CRAMER, and SCOTT WORTHINGTON, on behalf of themselves and all others similarly situated, | Case No. 2:24-cv-11197 (BRM) (JSA) |
| Plaintiffs, | **OPINION** |
| v. | |
| VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, d/b/a VOLKSWAGEN OF AMERICA, INC., and VOLKSWAGEN AG, a German Corporation, | |
| Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Volkswagen Group of America, Inc.'s ("VW America") Motion to Dismiss Plaintiffs Stacy Zeiders, Calvin Westlund, Maria Lydia Martienz, Jae Young Choi, Amanda DeLong, Brian Cramer, and Scott Worthington's Consolidated Class Action Complaint ("CAC") (ECF No. 20) pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6) (ECF No. 29). Plaintiffs filed an Opposition (ECF No. 31), and VW America filed a reply (ECF No. 39). This Court has jurisdiction pursuant to 42 U.S.C. § 1332(d). Having reviewed and considered the parties' submissions filed in connection with the motion and having declined to hold oral argument in accordance with Rule 78(b), for the reasons set forth below and for good

cause shown, VW America's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

For the purpose of this motion, the Court accepts the factual allegations in the CAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### A.    Factual Background

This action arises out of an alleged defect in certain 2022 and 2023 Volkswagen Tiguan vehicles purchased or leased after November 2021 ("Class Vehicles"). (ECF No. 20 ¶¶ 12, 25, 36, 50, 61, 72–73, 82–83.) Plaintiffs bring this putative class action individually and on behalf of all others similarly situated against VW America and Volkswagen AG ("VWAG") (collectively, "Defendants").[1] (*See generally id.*)

Plaintiffs allege the Defendants defectively installed the piston ring assembly in the Class Vehicles' engines. (*See id.* ¶ 163.) The Class Vehicles employ "four reciprocating pistons to convert pressure into a rotation motion." (*Id.* ¶ 109.) A four-step sequence is utilized to generate the rotating motion. (*Id.*) Relevant to this matter, "engine oil is used to lubricate the piston and cylinder wall as the piston moves up and down through the four-stroke sequence." (*Id.* ¶ 110.)

---

[1] VWAG is a German corporation with its principal place of business in Germany. (ECF No. 20 ¶¶ 96-98.) VW America is a New Jersey corporation with its corporate headquarters located in Virginia. (*Id.* ¶ 94.) VW America and is a wholly owned subsidiary of VWAG. (*Id.* ¶ 95.) On September 8, 2025, the parties filed a joint stipulation to extend the time for VWAG to respond to the CAC to October 17, 2025 (*id.* 27), which this Court subsequently granted (ECF No. 28). At this time, VWAG "has not been served with process and, accordingly, is not a party to this motion." (ECF No. 29 at 1 n.1.)

Each reciprocating piston utilizes three compression rings, which if properly tensioned, "prevent[s] engine oil from entering the combustion chamber." (*Id.* ¶ 111.) Absent properly tensioned compression rings, engine oil would enter the combustion chamber, which would result in decreased engine performance, damaged internal parts, and reduced engine oil. (*Id.* ¶ 115.)

Engine oil lubrication "reduce[s] wear on moving parts throughout the engine, improve[s] sealing, and cool[s] the engine by carrying heat away from the moving parts." (*Id.* ¶ 110.) In contrast, a lack of lubrication would result in "premature wear of internal parts, inadequate performance, and/or catastrophic engine failure." (*Id.*) A "smart oil monitor" gauges the amount of remaining engine oil and will illuminate a warning light on the dashboard if the engine oil in the vehicle needs to be refilled. (*Id.* ¶ 108.) The Class Vehicles' maintenance schedule advises the engine oil should be refilled either "every 10,000 miles or every year, whichever occurs first." (*Id.*)

Between November 2021 and November 2022, Plaintiffs purchased their respective Class Vehicles. (*Id.* ¶¶ 12, 25, 36, 50, 61, 72–73, 82–83.) Prior to purchase, Plaintiffs researched the vehicle on the Volkswagen website, reviewed the available Volkswagen marketing and promotional materials at the dealership, reviewed the Monroney sticker on the vehicle, "and spoke with V[olkswagen] sales representatives." (*Id.* ¶¶ 13, 26, 51, 62, 84; *but see id.* ¶ 37 (stating Martinez did not speak with a VW sales representative prior to purchase); *id.* ¶ 74 (stating Cramer only reviewed the Monroney sticker prior to purchase).) The Class Vehicles included a New Vehicle Limited Warranty. (*See* ECF No. 29-3.) The New Vehicle Limited Warranty "covers any repair to correct a defect in manufacturer's material or workmanship." (*See id.* at 11.)

Following purchase, Plaintiffs were frequently required to refill the engine oil due to the defectively installed piston ring assembly (the "Oil Consumption Defect"). (ECF No. 20 ¶¶ 14–20, 27–31, 42–47, 52–56, 63–70, 75–76, 85–89.) As a result of the Oil Consumption Defect,

Plaintiffs have developed concerns regarding the reliability and safety of the Class Vehicles (*Id.* ¶¶ 22, 32, 48, 58, 68; *but see id.* ¶¶ 71–93 (failing to allege either Cramer or Worthington share such concerns)) and have suffered damages, "including, but not limited to, out-of-pocket losses associated with the Oil Consumption Defect, diminished value of [the] [Class] [V]ehicle, and other consequential damages" (*Id.* ¶¶ 23, 34, 49, 59, 69, 79, 92). Plaintiffs allege Defendants knew of and concealed the Oil Consumption Defect. (*Id.* ¶¶ 133, 243.)

### B.    Procedural History

On December 16, 2024, Zeiders and Westlund filed a class action complaint against VW America. (ECF No. 1.) Both Martinez and Worthington subsequently filed their own class action complaints under separate docket numbers. (*See* ECF No. 11-1 at 4.) On February 4, 2025, Zeiders, Westlund, Martinez, and Worthington filed a motion to consolidate the three actions (ECF No. 11), which the Court granted on February 11, 2025 (ECF No. 13).

On March 13, 2025, Plaintiffs filed the CAC against Defendants on behalf of all individuals who purchased or leased a Class Vehicle in the nation (the "Nationwide Class") and in the states of Delaware (the "Delaware Subclass"), Pennsylvania (the "Pennsylvania Subclass"), Georgia (the "Georgia Subclass"), Maryland (the "Maryland Subclass"), New York (the "New York Subclass"), Illinois (the "Illinois Subclass"), and Minnesota (the "Minnesota Subclass") (collectively, the "Statewide Subclasses"). (*See generally* ECF No. 20.)

The CAC alleges five causes of action on behalf of the Nationwide Class or, in the alternative, the Statewide Subclasses: breach of implied warranty of merchantability (Ninth Cause of Action) (*id.* ¶¶ 226–32); breach of express warranty (Tenth Cause of Action) (*id.* ¶¶ 233–41); fraudulent concealment (Eleventh Cause of Action) (*id.* ¶¶ 242–59); negligent misrepresentation

(Twelfth Cause of Action) (*id.* ¶¶ 260–65); and unjust enrichment (Thirteenth Cause of Action) (*id.* ¶¶ 266–71).

The CAC also alleges eight causes of action on behalf of the Statewide Subclasses, respectively violation of: the Delaware Consumer Fraud Act (Count Eight), Del. Code Ann. tit. 6, § 2511, *et seq.* (*id.* ¶¶ 223–25); the Pennsylvania Unfair Trade Practices Act (Count One), 73 Pa. Stat. Ann. § 201-1, *et seq.* (*id.* ¶¶ 174–85); the Georgia Fair Business Practice Act (Count Three), Ga. Code Ann., § 10-1-393, *et seq.* (*id.* ¶¶ 192–98); the Maryland Consumer Protection Act (Count Two), Md. Code Com. Law § 13-101, *et seq.* (*id.* ¶¶ 186–91); the New York Deceptive Trade Practices Act & False Advertising (Count Five), N.Y. Gen. Bus. Law § 349; § 350 (*id.* ¶¶ 211–14); the Illinois Consumer Fraud & Deceptive Business Practices Act (Count Six), 815 Ill. Comp. Stat. Ann. § 505/1, *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act (Count Seven), 815 Ill. Comp. Stat. Ann. § 510/1, *et seq.* (*id.* ¶¶ 215–22); and the Minnesota Prevention of Consumer Fraud Act (Count Four), Minn. Stat. § 325F.68-70 (*id.* ¶¶ 199–10) (collectively, the "Consumer Fraud Act Claims").

On May 23, 2025, pursuant to the Court's Judicial Preferences, VW America submitted a pre-motion letter requesting leave to file a motion to dismiss. (ECF No. 25.) Plaintiffs filed a response on May 29, 2025. (ECF No. 27.) On June 3, 2025, the Court entered a text order granting VW America leave to file a motion to dismiss. (ECF No. 28.)

On June 17, 2025, VW America filed the Motion to Dismiss the CAC pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 29.) Plaintiffs filed their Opposition on August 1, 2025 (ECF No. 31; *see also* ECF No. 24 (permitting Plaintiffs to file their opposition within forty-five days of the filing of the motion to dismiss)); and VW America filed its Reply on September 16, 2025 (ECF No. 39; *see also* ECF No. 35 (permitting VW to file its reply on or prior to September 16, 2025)).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). A motion to dismiss under Rule 12(b)(1) challenging the Court's subject matter jurisdiction asserts the Court lacks "authority or competence to hear and decide the case before it." *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing Charles Alan Wright & Arthur R. Miller, *5B Federal Practice and Procedure* § 1350 (3d ed. 2004)). It requires a plaintiff to bear the burden of pleading that jurisdiction is appropriate. *Id.* at 521; *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction . . . to defeat a motion under 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *See Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)). The court is tasked with determining "whether [it is] dealing with a facial or factual attack to jurisdiction." *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

"A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship

among the parties, or because some other jurisdictional defect is present." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The standard of review for a facial attack is the same as one "under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Id.* (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

A factual attack, however, "concerns not an alleged pleading deficiency, but rather the actual failure of [a plaintiff's] claims to comport with . . . jurisdictional prerequisites." *United States ex rel. FLFMC, LLC*, 855 F. Supp. 2d 300, 304 (D.N.J. 2012) (quoting *United States ex rel. Atkinson*, 473 F.3d at 514). Unlike a facial attack, no presumption of truthfulness attaches to a plaintiff's allegations. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)).

Here, Defendant asserts a facial 12(b)(1) challenge given it does not raise arguments concerning any of the underlying facts but rather focuses exclusively on deficiencies in the pleadings. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual

claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested

by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### C.    Rule 9(b)

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

## III.    DECISION

VW America moves to dismiss the CAC for lack of standing pursuant to Rules 12(b)(1) (*see generally* ECF No. 29 at 36–39) and for failure to state a claim pursuant to 12(b)(6) (*see generally id.* at 10–35). The Court addresses each in turn.

### A.    Rule 12(b)(1)

VW America argues the Court should dismiss the nationwide claims pursuant to Rule 12(b)(1). (*See generally id.* at 36–39.) Specifically, VW America claims Plaintiffs do not have "Article III standing to assert claims on behalf of unnamed putative class members who reside or purchased their [Class Vehicles] in states in which the Plaintiffs themselves have suffered no

injury."[2] (*Id.* at 38–39.) VW America does not allege Plaintiffs do not have Article III standing to assert claims on behalf of same in the states in which the Plaintiffs were collectively injured or reside—Delaware, Georgia, Pennsylvania, New York, Maryland, Illinois, and Minnesota.[3] (*See generally id.* at 36–39.) In response, Plaintiffs contend "[t]his argument is premature and, as numerous courts have found, is more appropriate to address when Plaintiffs file their motion for class certification." (ECF No. 31 at 39.)

As recognized by Plaintiffs (*id.* at 40), however, there is a split among the district courts within the Third Circuit as to whether the standing of named class representatives to assert claims on behalf of unnamed plaintiffs arising under the laws of states where the named plaintiff neither resides nor alleges to have suffered any injury should be reviewed under Article III standing pursuant to Rule 12(b)(1) or under class standing pursuant to Rule 23. *Hardy v. Volkswagen Grp. of Am., Inc.*, Civ. A. No. 24-8251, 2025 WL 1409820, at *6–7 (D.N.J. May 14, 2025). At this time,

---

[2] VW America also argues Plaintiffs lack Article III standing: (1) to request injunctive relief as the CAC fails to establish Plaintiffs are "likely to suffer a future injury" (ECF No. 29 at 36-37); and (2) to compel Defendants to issue a recall as such relief is preempted by the Federal Motor Vehicle Safety Act, 49 U.S.C. § 30101, *et seq.* (*id.* at 37–38). First, the CAC sufficiently alleges a threat of future injury (*see* ECF No. 20 ¶¶ 23, 34, 48, 59, 69, 79, 92, 155) and, therefore, dismissal of the injunctive relief claims on this basis is not warranted at this juncture. Second, the Court recognizes there is a split among the district courts within the Third Circuit as to the preemptive effect of the Federal Motor Vehicle Safety Act on state law remedies. *Compare Hickman v. Subaru of Am., Inc.*, Civ. A. No. 21-2100, 2022 WL 11021043, at *12 (D.N.J. Oct. 19, 2022), *and Rieger v. Volkswagen Grp. of Am., Inc.*, Civ. A. No. 21-10546, 2023 WL 3271116, at *8 (D.N.J. May 4, 2023); *with Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 445–46 (D. Del. 2023). As neither the Supreme Court nor the Third Circuit has held the Federal Motor Vehicle Safety Act preempts state law remedies, this Court declines to do so.

[3] As VW America does not allege Plaintiffs do not have Article III standing to assert claims on behalf of unnamed putative class members who reside or purchased their Class Vehicles in the states of Delaware, Georgia, Pennsylvania, New York, Illinois, the Court need not conduct a review the three elements of Article III standing to establish same. *See Sittol v. AvalonBay Communities, Inc.*, Civ. A. No. 25-2124, 2025 WL 3041823, at *6–7 (D.N.J. Oct. 31, 2025) (reviewing the elements of (1) injury in fact; (2) traceability; and (3) redressability).

"[t]here is a fairly even split of authority among the cases that have previously been confronted with this issue, and there is no binding Third Circuit precedent directly on point." *Id.* (quoting *Snowdy v. Mercedes-Benz USA, LLC*, Civ. A. No. 23-1681, 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024); *compare, e.g.*, *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) (holding "[p]laintiffs' lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [the] [p]laintiffs have suffered no alleged injury"), *with In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 753–54 (D.N.J. 2021) (holding "prior to the class certification stage, it is premature to examine the named plaintiffs' standing to pursue claims on behalf of absent class members of the nationwide class" (internal quotation marks omitted)).

Although some courts have held a plaintiff may have standing to assert claims as a proposed named class representative on behalf of unnamed plaintiffs arising under the laws of states where the plaintiff neither resides nor alleges to have suffered any injury, which should be reviewed under Rule 23, this Court has declined to hold same. *Tijerina v. Volkswagen Grp. of Am., Inc.*, Civ. A. No. 21-18755, 2023 WL 6890996, at *8 n.3 (D.N.J. Oct. 19, 2023). As repeatedly affirmed by the Third Circuit, "[a] plaintiff must 'demonstrate [Article III] standing for each claim he seeks to press.'" *Long v. SEPTA*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (2015)). The Court may not "exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim." *Neale*, 794 F.3d at 359 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Therefore, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Lewis v. Casey*,

518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (internal quotation marks omitted)); *see also Long*, 903 F.3d at 325 ("[A]ny harm to unnamed class members cannot constitute injury in fact."). These well-established standing requirements do not change merely because the action involves a purported national class action. *See In re Horizon Healthcare Servs.*, 846 F.3d at 634; *see also Mielo v. Steak'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (explaining "the standing inquiry must be limited to a consideration of the class representatives themselves, after which [the court] may employ Rule 23 to ensure that classes are properly certified" (internal quotation marks omitted)).

Here, the CAC alleges claims only under the laws of seven states—Delaware, Pennsylvania, Georgia, Maryland, New York, Illinois, and Minnesota. (*See generally* ECF No. 20 at ¶¶ 174–271.) Importantly, Plaintiffs do not claim they have Article III standing to assert claims under the laws of any other state outside these seven. (*See id.*) Therefore, as Plaintiffs do not have Article III standing to assert a claim under the laws of any other state, the Court does not have the authority to review same. *Schaller v. U.S. Social Security Admin.*, 844 F. App'x 566, 570 (3d Cir. 2021); *In re Schering Plough Corp.*, 678 F.3d at 246.

Based on the foregoing, VW America's Motion to Dismiss the nationwide claims for lack of Article III standing is **GRANTED IN PART** to the extent such claims are premised on state-law claims brought on behalf of putative "Nationwide Class" members who purchased a Class Vehicle outside of the seven states represented by Plaintiffs—Delaware, Pennsylvania, Georgia, New York, Maryland, Illinois, and Minnesota.

### B.      Rule 12(b)(6)

VW America argues the Court should dismiss the CAC pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 10–35.) Specifically, VW America claims Plaintiffs fail to sufficiently plead the following claims: breach of express warranty (*id.* at 10–12); breach of implied warranty of merchantability (*id.* at 12–15); fraudulent concealment (*id.* at 15–30); negligent misrepresentation (*id.* at 15–17, 31–34); statutory fraud (*id.* at 18–30); unjust enrichment (*id.* at 35–36); and for injunctive relief (*id.* at 34–35).[4]

This litigation involves seven named Plaintiffs asserting claims under the laws of seven different states—Delaware, Georgia, Pennsylvania, New York, Maryland, Illinois, and Minnesota. VW America does not dispute that the state law under which each named Plaintiff brings their claim is the governing law to be applied. (*See generally id.*) Therefore, a choice of law analysis is unnecessary, and the Court will apply the law under which each named Plaintiff brings their claim. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry."); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-07871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015) ("[T]he Court will follow the lead of the parties and will not engage in a choice of law analysis.").

---

[4] VW America also argues the CAC should be dismissed as the pleading asserts Plaintiffs' claims collectively against both VW America and VWAG. (ECF No. 29 at 9–10.) The CAC, however, sets forth the role of both VW America and VWAG and distinguishes each defendant by their respective function. (ECF No. 20 ¶¶ 94–102.) Under the circumstances of this case, the Court does not find the use of the term "Defendants" creates any confusion or leaves any doubt as to the nature of the allegations. Accordingly, the CAC sufficiently puts VW America and VWAG on notice, and dismissal on this basis is not warranted. *Accord Tijerina v. Volkswagen Grp. of Am., Inc.*, Civ. A. No. 21-18755, 2023 WL 6890996, at *14 n.10 (D.N.J. Oct. 19, 2023); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. A. No. 16-2765, 2017 WL 1902160, at *9–10 (D.N.J. May 8, 2017) (denying similar request to dismiss based on "lumping").

### 1.    Express Warranty Claim

VW America asks the Court to dismiss the Tenth Cause of Action—breach of express warranty—for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 10–12.) Specifically, VW America argues the breach of express warranty claim should be dismissed as the New Vehicle Limited Warranty covers only repairs "to correct a defect in manufacturer's material or workmanship" (*Id.* at 10; *accord* ECF No. 29-3 at 11), which does not include "design defects" (*see generally id.* at 10–12).[5] In response, Plaintiffs argue the CAC does not allege a defect in design but rather a defect in workmanship. (ECF No. 31 at 11–14 (citing, in part, *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) (noting a defect in workmanship "is a deficiency in the execution of a product's assembly or construction," whereas a defect in design "is a flaw inherent in the product's intended operation and construction")).)

To plead a breach of express warranty claim, a plaintiff is required to allege the following elements: (a) an express warranty existed; (b) the defendant breached said warranty; and (c) the breach of said warranty proximately caused the plaintiff injury or damage. *See Godreau-Rivera v. Coloplast Corp.*, 598 F. Supp. 3d 196, 219 (D. Del. 2022); *Mueller v. Sunbean Prods. Inc.*, 535 F. Supp. 3d 351, 355 (E.D. Pa. 2021); *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456, 459–61 (Ga. Ct. App. 2004); *John C. Grimberg Co., Inc. v. Nudura Corp.*, 775 F. Supp. 3d 946, 960 (D. Md. 2025); *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012); *Bayer HealthCare*

---

[5] In support of its argument, VW America notes although the CAC does not allege the Class Vehicles contain a design defect, the initial Complaint expressly did. (ECF No. 29-1 at 11 (citing ECF No. 1 ¶ 2.) The Court, however, does not consider the allegations contained in the initial Complaint as an amended complaint "supersedes the original and renders it of no legal effect." *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (internal quotation marks omitted).

*LLC v. Aeropres Corp.*, 767 F. Supp. 3d 810, 817–18 (N.D. Ill. 2025); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1320 (D. Minn. 2018).

Here, the CAC alleges an express warranty exists—i.e., the New Vehicle Limited Warranty. (ECF No. 20 ¶ 234.) The New Vehicle Limited Warranty is limited to "repair[s] to correct a defect in manufacturer's material or workmanship" (ECF No. 29-3 at 11); neither party contests this limitation (*see generally* ECF No. 29; ECF No. 31). The CAC does not allege the Class Vehicles' piston ring assemblies are defective as designed, but rather alleges the assemblies are defective as a result of workmanship, i.e., incorrect installation. (*See, e.g.*, ECF No. 20 ¶ 111 (stating the piston ring assembly "when correctly sized and installed, and when properly tensioned, prevent[s] engine oil from entering the combustion chamber"), *id.* ¶ 116 (stating the "piston ring assembly in the Class Vehicles contain . . . insufficient piston ring tension, causing . . . . engine oil [to] not separate[] from the [c]ombustion [c]ycle as intended"), *id.* ¶ 163 (stating this "defect is based on poor manufacturing").) Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Plaintiffs, *see Phillips*, 515 F.3d at 228, the breach of express warranty claim is based on a workmanship defect and not a design defect. Therefore, the CAC sufficiently states a claim of breach of express warranty under the respective state laws.

Based on the foregoing, VW America's Motion to Dismiss the Tenth Cause of Action for failure to state a breach of express warranty claim is **DENIED**.

### 2.    Implied Warranty Claim of Merchantability

VW America asks the Court to dismiss the Ninth Cause of Action—breach of implied warranty of merchantability—for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 12–15.) Specifically, VW America claims the breach of express warranty claim should be dismissed as the CAC does not allege the Class Vehicles are not "merchantable"—that

they "stopped functioning" or "could not be driven safely." (*Id.*) VW America notes Plaintiffs continued to operate their respective vehicles despite the alleged defect and appropriately received indications to add additional oil. (*Id.* at 13–14.) Furthermore, VW America argues the New York Subclass and the Illinois Subclass's Breach of Implied Warranty claims should be dismissed because Choi and DeLong did not purchase their respective vehicles from VW America directly and, therefore, lack privity to assert same. (*Id.* at 15.)

In response, Plaintiffs argue the respective vehicles do not pass without objection in the trade, are not fit for their ordinary purpose, and the New York Subclass's claim is not barred based on Choi's lack of privity. (ECF No. 31 at 14–18.) Plaintiffs do not oppose VW America's argument the Illinois Subclass's breach of implied warranty claim should be dismissed as DeLong lacks privity to assert same. (*Id.* at 17 n.10.)

All seven states have adopted Uniform Commercial Code ("UCC") § 2-314 (Implied Warranty: Merchantability; Usage of Trade). U.C.C. § 2-314 (Unif. L. Comm'n 2022). Indeed, the express language of each state's law adopting U.C.C. § 2-314 is effectively uniform to both U.C.C. § 2-314 and one another. *Compare* U.C.C. § 2-314, *with* Del. Code Ann. tit. 6, § 2-314, 13 Pa. Stat. and Cons. Stat. Ann. § 2314, Ga. Code Ann. § 11-2-314, Md. Code Ann., Com. Law § 2-314, N.Y. U.C.C. Law § 2-314, 810 Ill. Comp. Stat. Ann. 5/2-314, *and* Minn. Stat. Ann. § 336.2-314. However, the caselaw interpretating each state's law by its respective courts varies. Therefore, while the seven states are relatively uniform in defining whether an implied warranty of merchantability exists, *see* U.C.C. § 2-314(1) (stating "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"); *id.* § 2-314(2)(a), (c) (stating a good is "merchantable" if it would "pass without objection in the trade under the contract description" *and* is "fit for the ordinary purpose[] for

17

which such [a] good[] [is] used"), the states differ in the essential elements to be alleged to sufficiently plead a breach of same.

All seven states, however, generally require the following elements: (1) the defendant sold the good; (2) the good was not merchantable—i.e., would not pass without objection under the contract description *or* was not fit for the ordinary purpose of which such a good is used—at the time of sale; (3) the plaintiff notified the defendant-seller the good was not merchantable within a reasonable time after discovering same; and (4) the plaintiff suffered damages as a result of the non-merchantable good. *See Reybold Grp., Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998); *Bieda v. CNH Indus. Am. LLC*, 518 F. Supp. 3d 863, 868 (W.D. Pa. 2021); *Whitaker v. Excel Indus.*, 512 F. Supp. 3d 1375, 1381 (S.D. Ga. 2021); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 286 (Md. 2007); *Fiuzzi v. Paragon Sporting Goods Co. LLC*, 212 A.D.3d 431, 433 (N.Y. App. Div. 2023); *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003); *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. Ct. App. 2010).

New York, however, also requires an additional element of privity of contract between the defendant and the plaintiff. *See Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016). Alternatively, a plaintiff may plead an implied warranty of merchantability claim under New York law by alleging a product is a "thing of danger"—i.e., "when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned." *Shaaya v. Jaguar Land Rover N. Am. LLC*, Civ. A. No. 20-5679, 2022 WL 2341599, at *11 (D.N.J. June 29, 2022) (quoting *Amato v. Subaru of Am., Inc.*, Civ. A. No. 18-16118, 2019 WL 6607148, at *13 (D.N.J. Dec. 5, 2019)).

Here, the CAC alleges: (1) Defendants sold the Class Vehicles (ECF No. 20 ¶¶ 100, 227); (2) the Class Vehicles were not merchantable at the time of sale (*id.* ¶ 229); (3) Plaintiffs notified Defendants the Class Vehicles were not merchantable within a reasonable time of discovery same (*id.* ¶¶ 12–93); and (4) Plaintiffs have suffered damages as a result of the non-merchantable Class Vehicles (*id.* ¶¶ 12–93). Therefore, accepting these allegations as true, *see Phillips*, 515 F.3d at 228, the CAC sufficiently states a claim for breach of implied warranty of merchantability claim under Delaware, Georgia, Pennsylvania, Maryland, and Minnesota, and the Motion to Dismiss is **DENIED** as to Cramer, Martinez, Zeiders, Westlund, and Worthington's respective implied warranty of merchantability claims.

The CAC fails to allege, however, the required element of privity of contract under New York law. (*See* ECF No. 20 ¶ 50.) Nevertheless, the CAC does allege Choi has concerns as to whether his Class Vehicle may be operated safely due to the Oil Consumption Defect (*id.* ¶ 58), which may cause "unexpected" and "catastrophic" "engine failure while the Class Vehicle[] [is] in operation" (*id.* ¶¶ 3, 110). Courts in this district have recognized allegations of potential "premature" and "catastrophic" engine failure to be sufficient to demonstrate a vehicle is a "thing of danger" at this stage of the litigation. *See, e.g.*, *Amato*, 2019 WL 6607148, at *13. Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Choi, *see Phillips*, 515 F.3d at 228, the CAC sufficiently alleges the Class Vehicle is a "thing of danger," *Shaaya*, 2022 WL 2341599, at *11. Accordingly, the CAC sufficiently states a claim of breach of implied warranty of merchantability under New York law, and the Motion to Dismiss is **DENIED** as to Choi's implied warranty of merchantability claim.

Based on the foregoing, VW America's Motion to Dismiss the Ninth Cause of Action for failure to state a breach of implied warranty of merchantability claim is **GRANTED** as to DeLong.

### 3.    Common Law Claims

VW America asks the Court to dismiss the Eleventh Cause of Action—fraudulent concealment—and the Twelfth Cause of Action—negligent misrepresentation—for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 18–34.) Specifically, VW America claims the common law claims should be dismissed as the claims are barred under the economic loss doctrine of each state. (*Id.* at 30–31.) Alternatively, VW America claims the CAC fails to establish VW America had pre-sale knowledge of the Oil Consumption Defect in the Class Vehicles (*id.* at 18–23); VW America had a duty to disclose the Oil Consumption Defect to Plaintiffs (*id.* at 26–33); and Plaintiffs relied on an affirmative representation (*id.* at 23–26), as required to sufficiently plead a fraudulent concealment or negligent misrepresentation claim.

In response, Plaintiffs argue the common law claims are not barred under the economic loss doctrine and are sufficiently pled. (ECF No. 31 at 32–35.) Plaintiffs do not oppose VW America's argument the negligent misrepresentation claim should be dismissed as to Westlund based on a lack of duty under Maryland law. (*Id.* at 35 n.39.)

### a.    Economic Loss Doctrine

All seven states have adopted the economic loss doctrine, also known as the economic loss rule, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 6 F.3d 604, 618 (3d Cir.1995)). "[T]he economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort.'" *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 968 A.2d 192, 202 (N.J. Super. Ct. App. Div. 2009)). The states, however,

have recognized exceptions to the economic loss doctrine, which typically involve a defendant's allegedly tortious act or omission that arises from but is independent to the contract. *See Bracco Diagnostics*, 226 F.Supp.2d at 564 (quoting *Emerson Radio Corp. v. Orion Sales, Inc.*, Civ. A. No. 95-6455, 2000 WL 49361, at *6 (D.N.J. Jan. 10, 2000)).

Relevant to this matter, Delaware, Georgia, and Maryland have recognized both a well-pled fraudulent omission claim and negligent misrepresentation claim as exceptions to their respective economic loss doctrines. *See Livery Coach Sols., L.L.C. v. Music Express/E., Inc.*, 245 F. Supp. 3d 639, 646 (D. Del. 2017); *Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1244 (S.D. Ga. 2019); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012). In contrast, New York, Illinois, and Minnesota have declined to recognize a well-pled negligent misrepresentation claim as an exception, *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243 (S.D.N.Y. 2022) (applying the economic loss doctrine to negligent misrepresentation claims absent allegations of personal injury); *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1160 (D. Minn. 2023) (applying the economic loss doctrine to "common law misrepresentation claims") (citing Minn. Stat. § 604.101 (2016)); *but see Hecktman v. Pac. Indem. Co.*, 59 N.E.3d 868, 873–74 (Ill. App. Ct. 2016) (recognizing a well-pled negligent misrepresentation claim as an exception to the economic loss doctrine in the limited circumstances in which the defendant is "in the business of supplying information for the guidance of others in their business transactions"); and Pennsylvania has declined to recognize either fraudulent concealment or negligent misrepresentation as an exception "if the misrepresentation relates to the quality of the good sold." *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011).

Based on the foregoing, VW America's Motion to Dismiss the Eleventh Cause of Action pursuant to the economic loss doctrine is **GRANTED** as to Zeider and VW America's Motion to

Dismiss the Twelfth Cause of Action pursuant to the economic loss doctrine is **GRANTED** as to Choi, Worthington, and Zeider.

### b.    Fraudulent Concealment & Negligent Misrepresentation

Although the states differ in the essential elements to be alleged to sufficiently plead a fraudulent concealment claim, Delaware, Georgia, New York, Maryland, Illinois, and Minnesota effectively require a plaintiff to assert the following elements: (1) knowledge, i.e., the defendant had knowledge of a material fact; (2) duty, i.e., the defendant had a duty to disclose to the plaintiff said material fact; (3) intent, i.e., the defendant concealed or omitted said material fact with the intention to induce the plaintiff to act or refrain from acting; (4) causation, i.e., had the defendant disclosed the omitted material fact, the plaintiff would not have acted or refrained from acting; and (5) damages, i.e., as a result of the defendant's omittance, the plaintiff was damaged. *See TransDigm Inc. v. Alcoa Glob. Fasteners, Inc.*, C.A. No. 7135, 2013 WL 2326881, at *6 (Del. Ch. May 29, 2013); *Bolling v. Mercedes-Benz USA, LLC*, Civ. A. No. 23-671, 2024 WL 3972987, at *14 (N.D. Ga. Aug. 27, 2024); *Lacey v. Mercedes-Benz USA, LLC*, Civ. A. No. 24-2770, 2025 WL 2597118, at *8 (D. Md. Sept. 5, 2025); *Diaz v. FCA US LLC*, Civ. A. No. 21-906, 2022 WL 4016744, at *26 (D. Del. Sept. 2, 2022); *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1057–58 (N.D. Ill. 2022); *Peterson v. Clark Lake Homes, Inc.*, No. A22-398, 2022 WL 16910578, at *4–5 (Minn. Ct. App. Nov. 14, 2022). Under both Delaware and Georgia law, the only difference between a fraudulent concealment claim and a negligent misrepresentation claim is "whether the defendant knowingly or negligently made the misrepresentations." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1365 (N.D. Ga. 2006); *see also Rohm & Haas Elec. Materials, LLC v. Honeywell Int'l, Inc.*, Civ. A. No. 06-297, 2009 WL 1033651, at *7 (D. Del. Apr. 16, 2009) ("[N]egligent misrepresentation only differs from fraud in that a party's knowledge

of falsity or reckless disregard of the truth need not be proven."). Therefore, if a plaintiff sufficiently pleads a fraudulent concealment claim under Delaware or Georgia law, then the plaintiff sufficiently pleads a negligent misrepresentation claim.

Although a plaintiff is typically required to plead a claim of fraud with particularity under Rule 9(b), the courts have relaxed this requirement in claims based on an omission of material fact. *See Tijerina*, 2023 WL 6890996, at *26; *see also Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." (internal quotation marks omitted)). Therefore, to sufficiently assert the elements of knowledge and intent in support of a fraudulent concealment claim, a plaintiff is merely required to allege "what [the] defendant is alleged to have known and when." *BK Trucking Co. v. Paccar, Inc.*, Civ. A. No. 15-2282, 2016 WL 3566723, at *8 (D.N.J. June 30, 2016) (quoting *In re AZEK Building Prods., Inc. Marketing and Sales Practices Litig.*, 82 F. Supp. 3d 608, 623 (D.N.J. 2015)); *accord Tijerina*, 2023 WL 6890996, at *26.

VW America argues the CAC fails to sufficiently allege the elements of knowledge, duty, and causation. (*See generally* ECF No. 29 at 18–26, 29–30.) VW America does not argue the CAC fails to sufficiently allege the elements of intent or damages. (*See generally id.*)

### i.    Knowledge

First, VW America argues the CAC fails to sufficiently assert the element of knowledge. (*See generally id.* at 18–23.) Specifically, VW America claims the CAC fails to establish VW America had pre-sale knowledge of the Oil Consumption Defect in the Class Vehicles. (*See id.* at 18–23.) In response, Plaintiffs argue the CAC sufficiently asserts the element of knowledge based on allegations of "[p]re-release testing, dealership data, and consumer complaints." (ECF No. 31

at 19–25; *accord* ECF No. 20 ¶¶ 130–33, 152–53 (alleging VW America tested the Class Vehicles prior to sale, including but not limited to exhaust emission durability testing); *id.* ¶¶ 144–46, 150 (alleging VW America collected field reports, customer complaints, and warranty data regarding excess oil consumption); *id.* ¶¶ 134–43 (alleging VW America issued technical service bulletins regarding excess oil consumption); *id.* ¶¶ 147–49 (alleging VW America reviewed customer complaints on social media websites regarding excess oil consumption).) Furthermore, Plaintiffs note "[t]he Court has rejected similar lack-of-knowledge arguments . . . in other oil consumption cases." (ECF No. 31 at 19 (citing *Rieger*, 2023 WL 3271116, at *2).)

The CAC adequately alleges facts supporting an inference VW America had pre-sale knowledge of the Oil Consumption Defect at this stage. Excluding Zeider, Martinez and Cramer were allegedly the first plaintiffs to purchase their respective Class Vehicles, which were purchased in November 2021. (ECF No. 20 ¶¶ 36, 71.) The CAC alleges VW America has periodically issued a technical service bulletin regarding complaints of oil consumption higher than the VW America standard since December 2008. (*Id.* ¶ 136; *accord* ECF No. 20-1.) Plaintiffs allege these bulletins are periodically issued "to include new models that are released each year." (ECF No. 20 ¶ 136; *see, e.g.*, ECF No. 20-1 (issued "[t]o include 2025 model year applicability").)

The CAC references a technical service bulletin issued on June 22, 2021, which was issued to include all 2022 Volkswagen models. (ECF No. 20 ¶ 136 n.12.) The Class Vehicles purchased by Westlund, Choi, DeLong, Cramer, and Worthington were 2022 Volkswagen Tiguans. (*Id.* ¶¶ 25, 50, 61, 72–73, 82–83.) Because the technical service bulletin, which included the 2022 Volkswagen Tiguan, was issued prior to Plaintiffs respective purchases of same in and following November 2021, this allegation alone is sufficient to support an inference VW America had pre-

sale knowledge of the Oil Consumption Defect in the 2022 Volkswagen Tiguan at this stage of the litigation.

In contrast, the CAC does not allege a technical service bulletin was issued to include any 2023 Volkswagen model prior to Martinez's purchase of his 2023 Volkswagen Tiguan in November 2021. (ECF No. 20 ¶ 36.) The periodically issued technical service bulletins, however, suggest VW America's knowledge of a consistent oil consumption defect in all of its models between 2008 and 2022. (*See id.* ¶¶ 134–43; *accord* ECF No. 20-1; *see also* ECF No. 20 ¶¶ 29, 43–47, 55–56, 63–64, 85 (stating the Oil Consumption Defect was "normal"); *id.* ¶ 146 (stating VW America "considers it acceptable for their cars to burn through a quart of oil every 1,000 miles").) Furthermore, the CAC alleges VW America was required to test the 2023 Volkswagen Tiguan prior to sale, including but not limited to testing the exhaust emission durability, during which "the Oil Consumption Defect would have manifested itself." (*Id.* ¶¶ 130–33, 152–53.) Based on these allegations of a consistent oil consumption defect in all VW America models since 2008 and VW America's required testing of the Class Vehicles prior to sale, the Court may reasonably infer VW America either knew or should have known of the Oil Consumption Defect in the 2023 VW Tiguan prior to Martinez's purchase of same. *Callen v. Daimler AG*, Civ. A. No. 19-1411, 2020 WL 10090879, at *16 (N.D. Ga. June 17, 2020) (upholding "the reasonable inference that the [d]efendants did, in fact, conduct various tests that could have revealed the existence of the defect"). Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Plaintiffs, *see Phillips*, 515 F.3d at 228, VW America had pre-sale knowledge of the Oil Consumption Defect. Accordingly, the CAC sufficiently alleges the element of knowledge at this stage of the litigation.

### ii.     Duty

Next, VW America argues the CAC fails to sufficiently allege the element of duty under the laws of each state. (*See generally* ECF No. 29 at 26–30.) Specifically, VW America claims "the CAC fails to identify any misleading statement by [VW America], partial or otherwise, much less one that relates to the [Class Vehicles'] pistons or oil consumption." (*Id.* at 26 (internal citation omitted).) In response, Plaintiffs argue the CAC sufficiently asserts the element of duty based on VW America's superior knowledge and affirmative statements contained in the maintenance schedule, "advis[ing] owners to change their oil every 10,000 miles or every year, whichever comes first." (ECF No. 31 at 27–28; *accord* ECF No. 20 ¶ 245.) Plaintiffs do not allege VW America had a duty to disclose the Oil Consumption Defect based on a confidential or fiduciary relationship between the parties. (*See generally* ECF No. 20.) As the element of duty is defined differently in each state, the Court addresses each in turn.

### A.     Delaware, Maryland, & Minnesota

Under Delaware, Maryland, and Minnesota law, a party to a transaction has a duty to disclose information, which if undisclosed, will cause a partial statement of fact to be misleading. *In re Student Fin. Corp.*, Civ. A. No. 02-11620, 2004 WL 609329, at *5 (D. Del. Mar. 23, 2004); *Kwintkiewicz v. Bentley Motors, Inc.*, Civ. A. No. 10-3212, 2011 WL 1336576, at *2 (D. Md. Apr. 7, 2011); *Jane Doe 43C v. Diocese of New Ulm*, 787 N.W.2d 680, 687 (Minn. Ct. App. 2010). "[S]ilence does not constitute fraud in the absence of a duty to speak." *Jane Doe 43C*, 787 N.W.2d at 687 (quoting *Berreman v. W. Publ'g Co.*, 615 N.W.2d 362, 375 (Minn. Ct. App. 2000)); *accord Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Also under Delaware law, a party to a transaction also has a duty to disclose "facts basic to the transaction if he knows that the

other is about to enter into it under a mistake as to them." *In re Student Fin. Corp.*, 2004 WL 609329, at *5.

The CAC alleges VW America had a duty under Delaware, Maryland, and Minnesota law to disclose the Oil Consumption Defect based on its prior representations. (ECF No. 20 ¶ 243.) Specifically, the CAC alleges VW America represented in its maintenance schedule the Class Vehicles require "an oil change every 10,000 miles or every year, whichever occurs first." (*Id.* ¶ 108; *accord* ECF No. 31 at 14–15, 28, 35.) A maintenance schedule "identif[ies] parts and components that require routine maintenance and/or replacement as certain points throughout the lifespan of [a] vehicle." *In re Volkswagen Timing Chain Prod. Liab. Litig.,* Civ. A. No. 16-2765, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017). Courts in this district have previously held a maintenance schedule may qualify as a partial statement of fact requiring a defendant to disclose information, if undisclosed, will cause the maintenance schedule to be misleading. *Id.*; *accord Opheim v. Volkswagen Aktiengesellschaft*, Civ. A. No. 20-2483, 2021 WL 2621689, at *15 (D.N.J. June 25, 2021); *Rickman v. BMW of N. Am.*, Civ. A. No. 18-4363, 2020 WL 3468250, at *14 (D.N.J. June 25, 2020); *Albers v. Mercedes-Benz USA, LLC*, Civ. A. No. 16-881, 2020 WL 1466359, at *12 (D.N.J. Mar. 25, 2020). Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Plaintiffs, *see Phillips*, 515 F.3d at 228, VW America had knowledge of the Oil Consumption Defect prior to Plaintiffs purchase of their respective Class Vehicles. Accordingly, the CAC sufficiently alleges the element of duty to disclose same based on the representations made by VW America in the maintenance schedule under Georgia, New York, and Illinois law.

**B.      Georgia, New York, & Illinois**

Under Georgia, New York, and Illinois law, a party to a transaction has a duty to disclose a material fact based on the party's "superior knowledge of essential facts render[ing] nondisclosure inherently unfair." *Gormley v. Marist Bros. of Sch.*, 236 A.D.3d 868, 872 (N.Y. App. Div. 2025) (first quoting *Sanford/Kissena Owners Corp. v. Daral Props., LLC*, 84 A.D.3d 1210, 1211 (N.Y. App. Div. 2011), then quoting *Barrett v. Freifeld*, 64 A.D.3d 736, 738 (N.Y. App. Div. 2009)); *see also Bolling*, 2024 WL 3972987, at *16 (imposing a duty to disclose "intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." (quoting *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013))); *Monopoli v. Mercedes-Benz USA, LLC*, Civ. A. No. 21-1353, 2022 WL 409484, at *10 (N.D. Ga. Feb. 10, 2022); *Bakhtiari v. Savenok*, 2023 IL App (3d) 220480-U, 2023 WL 6621399, ¶ 34 (Ill. App. Ct. 2024) (imposing a duty to disclose a material fact if "the plaintiff places trust and confidence in the [party], thereby placing the [party] in a position of influence and superiority over the plaintiff" (citing *Kurti v. Fox Valley Radiologists, Ltd.*, 464 N.E.2d 1219, 1123 (Ill. App. Ct. 1984)). Superior knowledge triggers a duty to disclose "only in instances where a party (1) has superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 690 (S.D.N.Y. 2011) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005)).

Martinez, Choi, and DeLong allege VW America had a duty to disclose the Oil Consumption Defect as it had superior knowledge of same, which "is an 'intrinsic quality' of the Class Vehicles and, given the internal nature, . . . Plaintiffs could not discover the [d]efect through 'the exercise of ordinary prudence and caution." (ECF No. 31 at 31–32 (quoting *Bolling*, 2024 WL

3972987, at *16); *see also* ECF No. 20 ¶ 245 (stating Plaintiffs "could not reasonably have been expected to learn or discover that their engines have a dangerous safety defect until after they purchased the Class Vehicles").) Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Plaintiffs, *see Phillips*, 515 F.3d at 228, VW America had prior knowledge of and failed to disclose the Oil Consumption Defect, which is an intrinsic quality of the Class Vehicles and could not have been reasonably discovered prior to purchase. Accordingly, the CAC sufficiently alleges the element of duty under Georgia, New York, and Illinois law, *see, e.g.*, *Tijerina*, 2023 WL 6890996, at *26 (finding superior knowledge triggers a duty to disclose under New York law); *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *20 (finding superior knowledge triggers a duty to disclose under Georgia and Illinois law).

### iii.    Causation

Finally, VW America argues the CAC fails to sufficiently allege the element of causation. (*See generally* ECF No. 29 at 23–26.) Specifically, VW America claims the CAC does not "plead the specific statements or information from [VW America], viewed by [Plaintiffs] prior to purchase, which allegedly should have contained the undisclosed information. (*Id.* at 23–24.) In response, Plaintiffs argue the CAC sufficiently alleges "they were unaware of the Oil Consumption Defect at the time of their purchase/lease and, had this material information been disclosed to them, they would not have bought/leased their vehicle, or would have paid substantially less for them." (ECF No. 31 at 25.)

Significantly, "allegations sufficient to show justifiable reliance on an omission differ from those sufficient to show reliance on a misrepresentation. By the very nature of fraudulent concealment, plaintiffs cannot be expected to point to the time, place, and precise substance of what should have been disclosed." *Bolling*, 2024 WL 3972987, at *17 (quoting *Monopoli*, 2022

WL 409484, at *10). The courts in this district have consistently held the element of causation is sufficiently pled wherein the plaintiffs "would not have paid as much for the Class Vehicles or would not have purchased them at all." *Id.; see also Tijerina*, 2023 WL 6890996, at *26 (finding the plaintiffs sufficiently pled reliance on alleged omissions based on allegations the defendant "failed to disclose the [defect] before the sale of the Class Vehicles when only [the defendant] knew of the claimed defect"); *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *24 (finding the plaintiffs sufficiently pled reliance on alleged omissions based on allegations defendant had superior knowledge of the defect, actively concealed same from the plaintiffs, and the alleged omissions "would mislead purchasers, including [the] [p]laintiffs, regarding the useful life of the vehicle, the anticipated cost of repair, and the overall value and quality of the Class Vehicles").

The CAC adequately alleges facts supporting causation at this stage of the litigation. The CAC alleges had Plaintiffs "known about the Oil Consumption Defect at the time of their purchase or lease transaction, they would not have purchased or leased the Class Vehicles or they would have paid substantially less for them than they did." (ECF No. 20 ¶¶ 5, 24, 35, 40, 60, 70, 80, 93.) Therefore, accepting these allegations as true and drawing all inferences in the light most favorable to Plaintiffs, *see Phillips*, 515 F.3d at 228, Plaintiffs "would not have paid as much for the Class Vehicles or would not have purchased them at all," *Bolling*, 2024 WL 3972987, at *17. Accordingly, the CAC sufficiently alleges the element of causation at this stage of the litigation.

Based on the foregoing, VW America's Motion to Dismiss the Eleventh and Twelfth Causes of Action for failure to state a fraudulent concealment or negligent misrepresentation claim under Delaware, Georgia, Maryland, and Illinois law is **DENIED**.

### 4.    Consumer Fraud Act Claims

VW America asks the Court to dismiss the First through Eighth Causes of Action—the Consumer Fraud Act Claims—for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 15–30.) Specifically, VW America grounds its request to dismiss the Consumer Fraud Act Claims on the same arguments raised in support of its request to dismiss the common-law fraud claims. (*See generally id.*)

Each of the states has enacted a consumer protection statute, permit a plaintiff to file a private cause of action against a defendant for the use of unfair, deceptive, or fraudulent acts or practices in a consumer transaction. *See generally* Del. Code Ann. tit. 6, §§ 2512, 2525(a); 73 Pa. Stat. Ann. §§ 201-3(a), 9.2(a); Ga. Code Ann. §§ 10-1-393, 399(a); Md. Code Ann., Com. Law §§ 13-303, -408(a); N.Y. Gen. Bus. Law §§ 349(a), (h), 350; 815 Ill. Comp. Stat. Ann. 505/2, 10a, 11a; Minn. Stat. Ann. §§ 8.31(3)(a), 325F.69. Although these statutes are not identical, each statute is liberally construed and generally broader than their common-law counterpart. *See Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 207 (D. Del. 2022); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021); *McClure v. Toyota Motor Corp.*, 759 F. Supp. 3d 1333, 1358–60 (N.D. Ga. 2024); *Reed v. Bank of Am. Home Loans*, Civ. A. No. 13-3265, 2016 WL 3218720, at *7–9 (D. Md. June 10, 2016); *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002); *Cuculich v. Thomson Consumer Elecs., Inc.*, 739 N.E.2d 934, 939 (Ill. App. Ct. 2000); *State v. Minnesota Sch. of Bus., Inc.*, 935 N.W.2d 124, 133 (Minn. 2019).

Having determined the CAC sufficiently states a claim under the provisions of the more narrowly construed common-law fraudulent concealment claim, the Court need not review whether the CAC sufficiently states a claim under the broader provisions of Delaware, Georgia, New York, Maryland, Illinois, and Minnesota's respective consumer protection statutes. As the

Court was not required to review whether the CAC sufficiently states a claim of fraudulent concealment under Pennsylvania common-law pursuant to the economic loss doctrine, however, the Court will review whether the CAC sufficiently states a claim under the provisions of Pennsylvania's statutory fraud act—i.e., the Pennsylvania Unfair Trade Practices Act, 73 Pa. Stat. Ann. § 201-1, *et seq.*

### a.    Pennsylvania Unfair Trade Practices Act

The Pennsylvania Unfair Trade Practices Act creates a private right of action for consumers injured by unfair or deceptive trade practices. 73 Pa. Con. Stat. § 201-9.1. To state a claim under same, a plaintiff must assert:

> (1) they purchased or leased "goods or services primarily for a personal, family, or household purpose"; (2) they suffered an "ascertainable loss of money or property"; (3) the loss occurred "as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by" the CPL; and (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision.

*Gregg*, 245 A.3d at 646 (citing 73 P.S. §§ 201-8, -9.2(a) § 201-8). "When allegations underlying a [Pennsylvania Unfair Trade Practices Act] claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose." *DeSimone v. U.S. Claims Servs., Inc.*, Civ. A. No. 19-6150, 2020 WL 1164794 at *3, at *6 (E.D. Pa. Mar. 11, 2020). In Pennsylvania, absent a fiduciary or confidential relationship, the courts have recognized a defendant "has a duty to disclose known material and dangerous defects, i.e. those defects which are likely to cause significant bodily harm." *Zwiercan v. GMC*, No. 3235, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003).

Stated another way, to sufficiently plead a statutory fraud claim under the Pennsylvania Unfair Trade Practices Act, like Choi, Zeider is required to demonstrate the Class Vehicles are a

"thing of danger." *Compare Shaaya*, 2022 WL 2341599, at *11 (defining the term a "thing of danger" as a product "likely to be a source of danger to several or many people if not properly designed and fashioned"), *with Zwiercan*, 2003 WL 1848571, at *2 (defining the term "dangerous defect" as a defect "likely to cause significant bodily harm"). Having determined the CAC sufficiently alleges the dangers of a potential "premature" and "catastrophic" engine failure to be sufficient to demonstrate a vehicle is a "thing of danger" as it relates to Choi's implied warranty of merchantability claim under New York law, *see supra* Section III.B.2, the Court similarly finds the allegations to be sufficient to demonstrate a vehicle is "dangerous" as it relates to Zeider's statutory fraud claim under the Pennsylvania Unfair Trade Practices Act at this stage of the litigation. *See Phillips*, 515 F.3d at 228. Accordingly, the CAC sufficiently alleges a statutory fraud claim under the Pennsylvania Unfair Trade Practices Act.

Based on the foregoing, VW America's Motion to Dismiss the First through Eighth Causes of Action is **DENIED**.

### 5.    Unjust Enrichment Claim

VW America asks the Court to dismiss the Thirteenth Cause of Action—unjust enrichment—for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* ECF No. 29 at 35–36.) Specifically, VW America claims the unjust enrichment claim is barred as a plaintiff is barred from alleging both a breach of an express warranty claim—i.e., a breach of contract claim—and an unjust enrichment claim.[6] (*Id.*) In response, Plaintiffs argue they are entitled to plead an unjust enrichment claim in the alternative. (ECF No. 31 at 36–37.)

---

[6] VW America similarly argues the Court should dismiss the claims for injunctive relief as Plaintiffs failed to allege they "lack any adequate alternative remedy at law." (ECF No. 29 at 34-35.) Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Therefore, Plaintiffs are entitled to seek their concurrent claims for injunctive or other equitable relief. *See*

Although each state defines the elements of unjust enrichment slightly differently, it is well-established these differences are immaterial as "there is no actual conflict between [the] different states' laws." *Sharma v. Gupta*, Civ. A. No. 20-3446, 2022 WL 970544, at *5 (D.N.J. Mar. 31, 2022) (quoting *Avram v. Samsung Elecs. Am., Inc.*, Civ. A. Nos. 11-6973, 12-976, 2013 WL 3654090, at *20 (D.N.J. July 11, 2013)). To sufficiently state a claim for unjust enrichment, a plaintiff must assert: the defendant received a benefit and the retention of said benefit without payment would violate "the fundamental principles of justice, equity, and good conscience." *In re Insulin Pricing Litig.*, Civ. A. No. 23-7042, 2025 WL 2573409, at *7 (D.N.J. Sept. 5, 2025) (quoting *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016)). It may be pled in the alternative even if there appears to be an express agreement between the parties if based on the allegation the agreement arose from unlawful or improper conduct, such as fraudulent concealment or negligent misrepresentation. *See Humana Inc. v. Merck & Co.*, Civ. A. No. 23-23023, 2025 WL 2538859, at *21 (D.N.J. Sept. 4, 2025); *see also Talkdesk, Inc. v. DM Trans, LLC*, No. N23C-08-005 MAA CCLD, 2024 WL 2799307, at *11 (Del. Super. Ct. May 31, 2024) (holding under Delaware law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud)" (internal quotation marks omitted)); *Bostic v. Ethicon Inc.*, Civ. A. No. 20-6533, 2022 WL 952129, at *15 (E.D. Pa. Mar. 29, 2022) (holding under Pennsylvania law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "based on unlawful or improper conduct established by an underlying claim, such as fraud" (internal quotation marks omitted)); *Shlapak v. Dau*, 917 S.E.2d 767, 780 (Ga. Ct. App. 2025) (holding

---

*Flynn-Murphy*, 2021 WL 5448716, at *12 (permitting the plaintiffs to seek concurrent claims for alternative types of relief).

under Georgia law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "the parties dispute the scope of their contractual obligations to each other"); *AXE Props. & Mgmt., LLC v. Merriman*, 311 A.3d 376, 389 (Md. 2024) (holding under Maryland law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "there is evidence of fraud or bad faith" (internal quotation marks omitted)); *Forework, LLC v. Cull*, Civ. A. No. 22-547, 2023 WL 2931845, at *8 (N.D.N.Y. Apr. 13, 2023) (holding under New York law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "there is a dispute as to the agreement's validity or enforceability" (internal quotation marks omitted)); *Lake v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 922–24 (N.D. Ill. 2013) (holding under Illinois law an unjust enrichment claim must be tied to an underlying claim and there is no basis to dismiss an unjust enrichment claim if the claim is tied to an underlying fraud claim, which survived a motion to dismiss); *Phillips v. Caliber Home Loans, Inc.*, Civ. A. No. 19-2711, 2020 WL 5531588, at *4 (D. Minn. Sept. 15, 2020) (holding under Minnesota law an unjust enrichment claim may be pled as an alternative to a breach of contract claim if "founded on the failure of consideration, fraud, mistake, or a circumstance in which it would be morally wrong for one party to enrich itself at the expense of another" (internal quotation marks omitted)). Accordingly, the CAC sufficiently alleges an unjust enrichment claim under Delaware, Georgia, Pennsylvania, New York, Maryland, Illinois, and Minnesota law.

Based on the foregoing, VW America's Motion to Dismiss the Thirteenth Cause of Action is **DENIED**.

IV.    CONCLUSION

For the reasons set forth above, VW America's Motion to Dismiss pursuant to Rule 12(b)(1) is **DENIED**; and VW America's Motion to Dismiss pursuant to Rule 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

**Date: January 8, 2026**                    /s/ Brian R. Martinotti
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

36